[Cite as *In re C.H.*, 2020-Ohio-716.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### MERCER COUNTY

IN RE:

    C.H.,

CASE NO.  10-19-10

NEGLECTED/DEPENDENT CHILD.

**O P I N I O N**

[TYLER H. - APPELLANT]

IN RE:

    T.H.,

CASE NO.  10-19-11

NEGLECTED/DEPENDENT CHILD.

**O P I N I O N**

[TYLER H. - APPELLANT]

IN RE:

    C.H.,

CASE NO.  10-19-12

NEGLECTED/DEPENDENT CHILD.

**O P I N I O N**

[TIFFANY T. - APPELLANT]

IN RE:

    T.H.,

CASE NO.  10-19-13

NEGLECTED/DEPENDENT CHILD.

**O P I N I O N**

[TIFFANY T. - APPELLANT]

Case Nos. 10-19-10, 11, 12, 13

---

**Appeals from Mercer County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 32019002 and 32019003**

**Judgments Affirmed**

**Date of Decision:   March 2, 2020**

---

**APPEARANCES:**

*Peter Van Arsdel* **for Appellant Tiffany T.**

*James A. Tesno and Erin M. Abels*  **for Appellant Tyler H.**

*Andrew J. Hinders* **for Appellee**

**SHAW, P.J.,**

{¶1} Mother-appellant, Tiffany T. ("Tiffany"), and Father-appellant, Tyler H. ("Tyler"), bring these appeals from the June 26, 2019 judgments of the Mercer County Common Pleas Court, Juvenile Division, granting permanent custody of the parties' two children, C.H. and T.H., to the Mercer County Department of Job and Family Services ("MCDJFS").  On appeal, both Tiffany and Tyler argue that service of the permanent custody motions was defective and that MCDJFS did not establish by clear and convincing evidence that granting permanent custody of the children to MCDJFS was in the children's best interests.  Tyler makes additional arguments in his appeal, contending that he received ineffective assistance of counsel when he

was "misinformed" regarding the final hearing, that the trial court erred by failing to *sua sponte* continue the final hearing, and that the trial court erred by "denying" Tyler's motion for relief from judgment.

*Background*

**{¶2}** Tiffany is the mother of two children, C.H., born in August of 2016 and T.H., born in August of 2017. Genetic testing conducted during the pendency of this case revealed that Tyler was the father of both C.H. and T.H.

**{¶3}** On May 21, 2018, Tiffany and Tyler were arrested in Mercer County on outstanding warrants. According to the record, Tiffany, Tyler, and the children were homeless at the time and Tiffany tested positive for illegal drug use.

**{¶4}** Complaints were filed in Mercer County Juvenile Court case numbers 32018044 and 32018045 regarding the children.[1] As a result of those cases, C.H. and T.H. were found to be neglected and dependent children, and on July 24, 2018, they were placed in the temporary custody of MCDJFS.

**{¶5}** The record indicates that Tiffany and Tyler had no contact with the children after August 21, 2018. There was no visitation between them, and there is no indication that Tiffany or Tyler attempted to visit their children.

---

[1] These older case files, which are not the subjects of this appeal, are not included in our record.

{¶6} On January 8, 2019, new complaints were filed in Mercer County Juvenile Court cases 32019002 and 32019003 alleging that C.H. and T.H. were neglected or dependent children.[2]

{¶7} Also on January 8, 2019, MCDJFS filed a "Motion for Service by Publication" pursuant to Juv.R. 16 and R.C. 2151.29. MCDJFS alleged that service of the complaint could not be completed by mail or personal service. Attached to the motion was an affidavit, indicating, *inter alia*, that MCDJFS, the GAL, and counsel for Tiffany and Tyler had no contact with Tiffany or Tyler and that Tiffany's and Tyler's whereabouts were unknown. The affidavit further stated that the last known address for Tiffany and Tyler was the Mercer County jail, but they were no longer incarcerated.

{¶8} The trial court found that service by publication was appropriate in this matter, and service by publication was then made in "The Daily Standard," a newspaper of general circulation throughout Mercer County.

{¶9} On January 11, 2019, a GAL was appointed for the children.

{¶10} Based on entries included in the record, Tiffany and Tyler were brought into the Mercer County Common Pleas Court, Juvenile Division, on January 11, 2018, found to be indigent, and attorneys were appointed to each individually.

---

[2] The complaint regarding T.H. was also served on Dylan Turner and he was originally a party to the case, but once it was learned that C.H. was actually Tyler's child, Dylan was dismissed as a party.

{¶11} On January 29, 2019, an initial hearing was held on the complaints for dependency and neglect. Counsel for each parent was present, but neither parent attended the hearing. At that time, the trial court determined that service had been made upon Tiffany and Tyler by publication. Afterward, the parents' attorneys waived reading of the complaints and entered denials to the allegations on behalf of their clients.

{¶12} On February 5, 2019, the matter proceeded to an adjudication hearing. At the hearing, counsel for both parents were again present and the parents were again absent. The trial court asked the attorneys about the absence of their clients and Tiffany's attorney stated that she had spoken with Tiffany that day for the first time in a "significant time." Tiffany's attorney further informed the trial court that Tiffany stated she was presently in Mendon, Ohio, and that Tiffany wanted her children returned to her. However, Tiffany told her attorney that she would not be attending the adjudication hearing and that she was attempting to obtain admission to a treatment facility in Florida. Tyler's attorney indicated that he had contact with Tyler that day as well, and that Tyler provided similar information to Tiffany. The attorneys for Tiffany and Tyler made a general objection to proceeding with the adjudication hearing in the absence of the parents.

{¶13} Despite the objections from the parties' attorneys, and the absence of the parents, the trial court proceeded with the adjudication hearing. Following the

evidence presented at the hearing, C.H. and T.H. were found to be dependent and neglected children.[3] An entry reflecting this finding was filed February 22, 2019.

{¶14} On March 6, 2019, the matter proceeded to a dispositional hearing. Tiffany and Tyler *were* present at this hearing, along with their attorneys, the GAL, and the assistant prosecutor representing MCDJFS. At the hearing, the trial court found that MCDJFS had made reasonable efforts to prevent the removal of the children, to eliminate removal, or to make it possible for the children to return home.[4] The trial court then found that it was in the children's best interest that the children continued to reside apart from the parents. The trial court found that neither parent had cooperated with MCDJFS in this matter, and that there was no suitable relative placement. MCDJFS was granted temporary custody of the children.[5]

{¶15} On May 13, 2019, MCDJFS filed motions for permanent custody of the children arguing, *inter alia*, that the parents had demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children. In addition, MCDJFS argued that the parents had not provided a permanent home for the children. The permanent custody motions

---

[3] No transcript from this hearing was produced.
[4] No transcript from this hearing was produced.
[5] In addition to the dispositional orders, at that time, Tyler was ordered to undergo paternity testing along with Dylan Turner, who was listed on the birth certificate of T.H. as that child's father. As a result of the testing, Tyler was determined to be the natural father, and Dylan was excluded as the potential father. A hearing was held on April 30, 2019, officially establishing Tyler as the father of both children. The record seems to reflect both parents being present for this hearing.

requested service to be made upon Tiffany and Tyler at 222 Sycamore Street, Kenton, Ohio, 43326, Lot 13, Salisbury Park.

{¶16} On May 23, 2019, a deputy sheriff filed a notice that he was "unable to locate lot#" and could not serve Tiffany and Tyler with the permanent custody motions.

{¶17} MCDJFS then filed a "Motion for Service by Publication" pursuant to Juv.R. 16 and R.C. 2151.29. The motion contended that Tiffany and Tyler could not be served by personal service or by mail. Attached to the motion was an affidavit stating that Tyler and Tiffany had personally provided their last known address as "Lot 13, Salisbury Park, Kenton, Ohio 43326," but Tyler and Tiffany could not be located there. In addition, according to the affidavit, a caseworker for the children had been in contact with a Kenton City Police Officer who could not locate Tiffany and Tyler at the Salisbury Park address when the officer looked for them on an unrelated matter.

{¶18} On May 24, 2019, the trial court reviewed the motion for service by publication and concluded, upon review of the affidavit and the file in this matter, service by publication was appropriate. Service was ordered to be published in The Daily Standard, a newspaper of general circulation throughout Mercer county, on May 25, 2019. In addition, the trial court ordered the parties' attorneys to be served with a copy of the summons. The service by publication was made as requested.

{¶19} Just prior to the hearing on the motion for permanent custody, the GAL filed a written report and recommendation. The GAL stated that despite numerous attempts at contacting and interviewing Tiffany and Tyler, the GAL was unable to do so. The GAL's report stated that the current whereabouts of the parents were unknown, and that the parents' interactions with their children had been essentially nonexistent in this case. The GAL recommended that permanent custody be granted to MCDJFS.

{¶20} On June 4, 2019, the matter proceeded to a hearing on the permanent custody motions. Counsel for Tiffany and counsel for Tyler were present for the hearing, but neither parent was present. The trial court delayed the start of the hearing to see if the parents would arrive and asked the bailiff to search the hallways of the courthouse, but the parents did not appear. The trial court then inquired regarding the whereabouts of the children's parents, and the following conversation transpired.

> **[TIFFANY'S ATTORNEY]: Thank you, Your Honor.**
>
> **The last time we were here in court, [Tiffany] was present. She indicated to me she was residing at the Salisbury Park camp ground on Site 13. Though, she could not receive mail there, she did get (inaudibles) address for mail that to a location she's not residing at to receive mail.**
>
> **I have received mail back. We've also sent to her old address as well just in case it was getting forwarded. Received that back.**

**I have not had any contact with my client since the last court date even though she was requested to make contact with me so we could arrange to prepare for today and I have received no contact whatsoever, Your Honor, so I do not have a location of my client.**

**THE COURT:  All right.  Thank you very much.**

**[Tyler's counsel], same question on [Tyler].  Do you know where he is?**

**TYLER'S  ATTORNEY:  Thank you, Your Honor.**

**I did speak with him on the phone today and he said that he was at the camp ground, that he gave me a second address there that he was (inaudibles) mailing address only and he said he would not be able to make it here, they have no transportation.**

**THE COURT:  Did he have knowledge of when this would be?**

**[TYLER'S ATTORNEY]:  He said from the last hearing at which he was attending he knew about the hearing today, yes.**

**THE COURT:  But he hasn't reached out to you or been in contact with you?**

**[TYLER'S ATTORNEY]:  Other than the phone call when he called me back, no.**

**THE COURT:  He just called you (inaudibles).  When was his last contact with you, was that yesterday?**

**[TYLER's ATTORNEY]:  I believe it was this morning.**

**THE COURT:  This morning?  On the day of the hearing?**

**[TYLER'S ATTORNEY]:  Yes.**

**THE COURT:  He hasn't contacted you at all till today?**

**[TYLER'S ATTORNEY]:  No.**

**THE COURT:  Okay.  The court will also note.**

**[TIFFANY'S ATTORNEY]:  Your Honor, if I may?**

**THE COURT:  Yes, please.**

**[TIFFANY'S ATTORNEY]:  Our clients do reside together, at least the last I knew from information I have had, so if his client is unable to have transportation, I would believe that my client would not have transportation either, so as noted previously, she was here at the last hearing so she was aware of this hearing.**

**THE COURT:  The court will also note there was notice by publication to both parents.  The court will also note that the parents know where the courthouse is, they appear to have been aware of the date and they * * *** [had their attorneys' contact information].

(June 4, 2019, Tr. at 6-10).

{¶21} After these preliminary matters regarding the parents' whereabouts were discussed, the matter proceeded to a hearing on the permanent custody motion.

{¶22} Heidi Duhamel, a caseworker for MCDJFS, provided testimony at the hearing that C.H. and T.H. were in agency custody and that they were placed with the agency on May 21, 2018.  She testified that a case plan was developed to support reunification, which contained eight primary issues for the parents to address.  These issues included, *inter alia*, that the parents undertake drug and alcohol assessments, that the parents remain drug free, that the parents secure housing, that the parents provide the address of their home, that the parents secure employment, and that the

parents take parenting classes. Duhamel stated that the parents had made no progress whatsoever on their case plan, that they had not engaged in any services or conducted any drug screens. Duhamel testified that the parents' contact with MCDJFS had been very limited, at best.

{¶23} In addition, Duhamel testified that the parents only had three visitations with the children since MCDJFS had taken custody of them. Those three visitations were all in August of 2018, specifically, August 2, 2018, August 14, 2018, and August 21, 2018. As of the date of the final hearing, the parents had gone approximately ten months without *any* contact with their children. Duhamel testified that the children were currently in a position to be adopted if the agency was granted permanent custody.

{¶24} Duhamel was asked on cross-examination if, to her knowledge, Tyler and Tiffany were aware that MCDJFS was seeking permanent custody. Duhamel testified that she had spoken about the permanent custody matter with Tiffany and Tyler on more than one occasion including over the phone and at the last court hearing on April 30, 2019.[6] Duhamel testified that she "assume[d]" the parents were aware of the importance of the hearing as she had informed the parents that MCDJFS was "going forward with the request for permanent custody." (Tr. at 21). After Duhamel's testimony, MCDJFS rested its case.

---

[6] The hearing on April 30, 2019, affirmatively established paternity. No transcript from this hearing was produced.

{¶25} Tiffany's attorney called no witnesses. Tyler's attorney also did not call any witnesses; however, he made the following statement.

> **I might say I did speak with my client today or yesterday I'm in the midst of writing up a GAL report on another case and he asked me about this hearing and whether it was for permanent custody. (Inaudibles) equivocal answer about whether it was for permanent custody or not. I need to be honest with the court about that at this point.**
>
> **I'm satisfied from the statement of the Job and Family Services worker that they knew it was permanent custody. They might have gotten an ambiguous answer from me over the phone, however.**

(Tr. at 22-23).

{¶26} The trial court responded to Tyler's attorney by asking him if Tyler was present for the April 30, 2019 hearing, and if the permanent custody hearing was set that day, and Tyler's attorney responded in the affirmative to both questions.[7]

{¶27} The GAL then gave a statement that the parents had done nothing up to this point, that the parents had scheduled appointments/interviews with the GAL on three separate occasions and that they did not show up for those appointments or even call to say that they were unavailable. The GAL stated that it was in the children's best interests that permanent custody be granted to MCDJFS.

---

[7] It might have been generally mentioned that the permanent custody motion would be filed but it had not even been filed at the time of the April 30, 2019 hearing. However, we have no transcript from the hearing so we do not know what was discussed or stated.

{¶28} The trial court then made a ruling on the record, indicating that there was very little testimony provided because nothing had been done by the parents in this case. However, the trial court ultimately found that it was in the best interests of the children for permanent custody to be granted to MCDJFS.

{¶29} Judgment entries reflecting the trial court's determination regarding permanent custody were filed June 26, 2019. The judgment entries found by clear and convincing evidence "that the child[ren] cannot be reunited with the parents within a reasonable time. * * * [B]oth parents have failed to support the child[ren] and have failed to maintain a stable residence or employment. They have made minimal to no efforts to participate in services Ordered by the Court in a Case Plan * * * [a]nd, the parents last visited with the child[ren] in August of 2018." (32019002 Doc. No. 40). The trial court found that the permanent custody motion should be granted with respect to R.C. 2151.414(E), and that under R.C. 2151.414(D), it was in the children's best interests for permanent custody to be granted to the agency, particularly due to their need for permanency and the potential for adoption.

{¶30} On July 24, 2019, Tiffany filed motions for relief from judgment under Civ.R. 60(B). Tiffany argued that MCDJFS had not provided adequate resources in this matter and that MCDJFS did not look into kinship placement. In addition, she claimed she misunderstood the nature of permanent custody as explained by her

attorney, and that she missed mailings due to not checking or picking up her mail regularly. However, Tiffany's motion and the accompanying affidavit stated that Tiffany was "verbally and in writing notified" by her attorney concerning the permanent custody hearing scheduled June 4, 2019.

{¶31} On July 25, 2019, Tyler also filed motions for relief from judgment stating that his attorney mistakenly told him that the permanent custody hearing was actually an initial hearing on "the refiling of the Complaint" and that the issue of permanent custody was not being heard at that time. Tyler further stated that he had moved from Kenton to Coldwater, that he had acquired a job, that he was drug-free, and that he was ready to pursue the case plan. Similar to Tiffany, he also alleged that MCDJFS had not adequately provided resources in this matter and MCDJFS had not adequately sought kinship placement. He also claimed that MCDJFS failed to complete routine "home" visits.

{¶32} Notably, despite Tyler's claims in the affidavit he signed and filed July 25, 2019, which accompanied his motion for relief from judgment, he filed *another* affidavit that same day seeking to avoid paying court costs or a deposit. That second affidavit stated that until recently Tyler was "homeless," and that he was "currently unemployed." (32019002, Doc. No. 45).

{¶33} On July 25, 2019, before the trial court had any opportunity to address the motions for relief from judgment, Tyler filed appeals from June 26, 2019,

judgment entries granting permanent custody of the children to MCDJFS. Tyler

asserted the following assignments of error for our review.

**Tyler's Assignment of Error No. 1**
**The trial court erred in entering final judgment against appellant because service of process was defective.**

**Tyler's Assignment of Error No. 2**
**Appellant was denied his right to effective assistance of counsel when he was misinformed of the type of hearing.**

**Tyler's Assignment of Error No. 3**
**The trial court erred when it granted permanent custody to the Mercer County Department of Job and Family Services because the State did not meet its burden of proof by clear and convincing evidence.**

**Tyler's Assignment of Error No. 4**
**The trial court erred by failing to *sua sponte* continue the permanent custody hearing.**

**Tyler's Assignment of Error No. 5**
**The trial court abused its discretion when it denied appellant's motion for relief from judgment.**

{¶34} On July 26, 2019, Tiffany filed her own appeals challenging the trial

court's permanent custody awards to MCDJFS. She asserts the following

assignments of error for our review.

**Tiffany's Assignment of Error No. 1**
**The trial court erred in entering final judgment against Appellant because service of process was defective.**

**Tiffany's Assignment of Error No. 2**
**The trial court erred when it granted permanent custody to the Mercer County Department of Job and Family Services because**

**the Department did not meet its burden of proof by clear and convincing evidence.**

{¶35} Where appellants' assignments of error overlap, we elect to address them together.[8]

*Tyler's First Assignment of Error*;
*Tiffany's First Assignment of Error*

{¶36} In Tyler's first assignment of error, and in Tiffany's first assignment of error, they argue that service of the permanent custody motions was defective. Specifically, they claim that the MCDJFS did not exercise "reasonable diligence" in attempting to notify them of the permanent custody motions and the final hearing. In addition, they argue the notice in the service by publication failed to include their last known address and the street address of the courthouse as required under Juv.R. 16(A).

Standard of Review

{¶37} We recognize that the right to parent one's child is a fundamental right. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶28. This fundamental right is protected by the Due Process Clause in the United States Constitution and by Section 16, Article I of the Ohio Constitution. *In re K.J.*, 10th Dist. Franklin No. 15AP-21, 2015-Ohio-2244, ¶ 10, citing *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 16. Due process requires both notice and an opportunity to be heard.

---

[8] Where Tyler and Tiffany are being addressed together, we will refer to them as "appellants."

*In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 13. A valid court judgment requires both proper service under the applicable Ohio rules and adequate notice under the Due Process Clause. *In re J.T.*, 4th Dist. Jackson No. 18CA9, 2019-Ohio-465, ¶ 31.

{¶38} Despite the procedural importance of due process before terminating parental rights and responsibilities, "[a] parent's natural rights * * * are subject to balancing, and ultimately subordinated to, the ultimate welfare of a child. As a result, although a parent has a constitutionally protected right to raise his or her child, the right may be terminated when necessary for the best interest of the child." *In re K.J.*, *supra*, at ¶ 10, citing *In re S.W.*, 10th Dist. Franklin No. 05AP-1368, 2006-Ohio-2958, ¶ 7, citing *In re Cunningham*, 59 Ohio St.2s 100, 106 (1979) ("[p]arental interests must be subordinated to the child's interest in determining an appropriate disposition of any petition to terminate parental rights.").

Analysis

{¶39} Pursuant to R.C. 2151.414(A)(1), when an agency files a motion for permanent custody, "the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code[.]" Revised Code 2151.29 requires service to be made by delivering a copy to the person summoned or by leaving a copy at the person's usual place of residence. If such service is impracticable, service can be made by registered or

certified mail, subject to some conditions. In addition, service can be made by publication in a newspaper of "general circulation throughout the county" when it has been established by affidavit that the person to be served cannot be found or that the person's address cannot be ascertained. Pursuant to R.C. 2151.29,

> **Whenever it appears by affidavit that after reasonable effort the person to be served with summons cannot be found or the person's post-office address ascertained, whether the person is within or without a state, the clerk shall publish such summons once in a newspaper of general circulation throughout the county. The summons shall state the substance and the time and place of the hearing, which shall be held at least one week later than the date of publication. A copy of the summons and the complaint, indictment, or information shall be sent by registered or certified mail to the last known address of the person summoned unless it is shown by affidavit that a reasonable effort has been made, without success, to obtain such address.**
>
> **A copy of the advertisement, the summons, and the complaint, indictment, or information, accompanied by the certificate of the clerk that such publication has been made and that the summons and the complaint, indictment, or information have been mailed as required by this section, is sufficient evidence of publication and mailing. When a period of one week from the time of publication has elapsed, the juvenile court shall have full jurisdiction to deal with such child as provided by sections 2151.01 to 2151.99 of the Revised Code.**

{¶40} Juvenile Rule 16(A) also provides some guidelines for service by publication when the residence of a party is unknown and cannot be ascertained with reasonable diligence. It reads, in pertinent part, "[t]he publication shall contain the name and address of the court, the case number, the name of the first party on

-18-

each side, and the name and last known address, if any, of the person or persons whose residence is unknown." Juv.R. 16(A).

{¶41} In this case, appellants were arrested on approximately May 21, 2018, on outstanding warrants. At that time their children were removed from their care. The record seems to indicate that appellants spent some time incarcerated after their arrest. The only address for appellants contained in the record after appellants' release from incarceration was at a campground, specifically 222 Sycamore Street, Kenton, Ohio, 43326: Lot 13, Salisbury Park.

{¶42} When MCDJFS filed its motions for permanent custody, service was requested to be made on appellants at the campground—their last known address. A deputy sheriff attempted to serve the motions by personal service but was "[u]nable to locate lot number." (32019003, Doc. No. 31).

{¶43} After the deputy sheriff was unable to serve the appellants, MCDJFS filed a motion for service by publication. The motion was accompanied by an affidavit, which stated that the current address of the appellants was unknown, and that it could not be ascertained with reasonable diligence. The affidavit included a background of the case, stating that Tiffany and Tyler had provided no valid address to the police, to MCDJFS, or the Mercer County Child Support Enforcement Agency. In addition, the affidavit stated that separate from the attempted service of the permanent custody motion, a Kenton City Police Officer had tried to locate

Case Nos. 10-19-10, 11, 12, 13

Tiffany and Tyler at the Salisbury Park address on an unrelated matter and the officer told a caseworker that he was unable to locate them there.

{¶44} The trial court granted MCDJFS's motion and service was made by publication. It read as follows.

**IN THE COMMON PLEAS COURT OF MERCER COUNTY, OHIO JUVENILE DIVISION**

IN THE MATTER OF: T.H. an alleged neglected/dependent child. Case No. 32019003.[9]

**NOTICE BY PUBLICATION**
**(O.R.C. 2151.29)**

To: Tiffany Renee Hammond and Tyler Hammond, parents of T.H., D.O.B. 8/15/2017.

The Mercer County Department of Job and Family Services has filed a Motion for Permanent Custody regarding the child, T.H., D.O.B. 8/15/2017, in the above captioned case. The motion requests that Permanent Custody of the child be granted to the Mercer County Department of Job and Family Services.

Tiffany Renee Hammond, Tyler Hammond and the unknown father of the child[10] are to be personally present in the Mercer County Juvenile Court, Mercer County Courthouse, Celina, Ohio, at 2:30 P.M. on June 4, 2019. Should they fail to appear at that time they may lose valuable rights with regard to the child. His attention is directed to the following notice.

**NOTICE**

Notice to all parties: Each party to this proceeding has the right to be represented by counsel, to be appointed by the Court in the event that the party is unable to afford counsel. Any party desiring legal assistance in this matter should contact Penny Nieport, Deputy Clerk of the Mercer County Juvenile Court, at 419-586-2418.

---

[9] The publication for C.H. read the same, only it referenced case number 32019002, and cited C.H.'s date of birth as 8/3/2016. (32019002 Doc. No. 38).

[10] At this point, Tyler had been established as the father of both children, so it is unclear why "unknown father of the child" is stated. Regardless, Tyler is specifically listed.

-20-

(32019003 Doc. No. 38).

{¶45} After the notice by publication was posted, the matter proceeded to a final hearing wherein appellants did not attend, though their attorneys were present. Tiffany's counsel stated that she had not been in contact with Tiffany, though she had told Tiffany of the need to prepare for the hearing. Tyler's counsel said that Tyler had contacted him either the morning of the hearing or the day before. Tyler's counsel relayed that Tyler said he did not have transportation to the hearing. However, Tyler's counsel did state that he may have not given an accurate answer regarding whether the scheduled hearing was for permanent custody. Nevertheless, the MCDJFS caseworker testified at the final hearing that the appellants were at the most recent hearing and that they had been informed of the pending permanent custody motion. The trial court also found that there was service by publication.

{¶46} On appeal, appellants argue that they did not receive proper notice of the permanent custody hearing. They argue that MCDJFS did not exercise reasonable diligence in attempting to obtain their whereabouts and that the notice by publication itself was deficient.

{¶47} Dealing first with the exercise of reasonable diligence, MCDJFS attempted personal service on appellants at their last known address, which was the address appellants had provided. Throughout the pendency of this case, appellants regularly did not maintain contact with their attorneys or with MCDJFS. Similarly,

they did not regularly attend court hearings for their children. MCDJFS attempted personal service at the only place appellants were known to be or known to potentially receive mail. When the appellants could not be located there, the MCDJFS attempted service by publication. Notably, at least one Ohio Appellate Court has held, "The court does not delve into an examination of whether reasonable diligence was in fact exercised unless the defendant attempts to challenge the presumption in the trial court." *In re D.S.*, 9th Dist. Summit No. 24619, 2009-Ohio-3167, ¶ 17, citing *Sizemore v. Smith*, 6 Ohio St. 3d 330, 331 (1983).

{¶48} Appellants seem to suggest that more diligence should have been exercised by MCDJFS, despite the fact that in a later-filed affidavit Tyler stated that "until recently" he was homeless. As he and Tiffany were apparently staying together, that would make them both homeless, and likely unreachable by mail or personal service absent their specific notification of where they could be reached.

{¶49} According to the State's knowledge, and that of Tiffany and Tyler's attorneys, the last known address for appellants was at the campground. Tiffany's attorney was not even able to reach Tiffany by mail at that address. Reasonable diligence depends on the particular facts and circumstances of each case. *See In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 25. We fail to see how in these circumstances the MCDJFS did not exercise reasonable diligence when neither Tiffany nor Tyler have presented any indication in support of their challenge as to

how MCDJFS could have possibly obtained Tiffany's and Tyler's whereabouts. Thus the argument that MCDJFS failed to exercise reasonable diligence is not well-taken.

{¶50} Next, appellants argue that the notice by publication in this matter was insufficient. They argue that the notice failed to list the specific address of the courthouse and that it failed to list the appellants' last known address.

{¶51} Contrary to appellants' argument, the notice did specifically state that the permanent custody motion would be heard at the "Mercer County Juvenile Court, Mercer County, Courthouse, Celina, Ohio." While the notice may not have given the specific street address of the courthouse, appellants had been to hearings in this case before, albeit sparingly, and were aware of where the courthouse was. Thus the failure to include the street address of the courthouse does not constitute insufficient notice in this matter, particularly where the specific court, date, and time were all mentioned.

{¶52} Nevertheless, it is true that the publication did not include a last known address for the appellants, but it is unclear to what extent the appellants had an address at all to be included in the notice given their apparent periods of homelessness. However, even assuming a failure to include the last known address was an issue, an affidavit later-filed by Tiffany stated that she was aware of the permanent custody hearing, specifically the date and the time of it. She just claimed

she may have misunderstood the nature of the hearing. Tiffany's affidavit indicates that she, and presumably Tyler since they were together, had *actual* notice of the hearing. Moreover, Tyler's conversation with his attorney on the day before the final hearing or the day of the final hearing would further indicate his *actual* notice of the hearing.

{¶53} Tyler and Tiffany may contend that they did not understand what the hearing was for, but they had repeatedly not participated in this case since essentially its inception. They showed little interest in their children or in proceeding with their case plan. Now they seek to be protected by claiming a due process violation when it is largely through their own actions that it was difficult to serve them or get them to come into court. The appellants were aware that this case was ongoing and the MCDJFS caseworker testified that she had informed them of the permanent custody hearing. These circumstances essentially call into question the credibility of their current claims on appeal as to insufficient notice of the existence or nature of the permanent custody hearing. Cases cited by the appellant in support of the proposition that service was defective here such as *In re Cooper*, 8th Dist. Cuyahoga No. 79899, 2002 WL 568192 (April 11, 2002), and *In re J.T.*, 4th Dist. Jackson No. 18CA9, 2019-Ohio-465, are factually distinguishable.[11] After reviewing the record, we cannot find that the notice in this matter was insufficient.

---

[11] In fact, *J.T.* itself has no precedential value as two judges concurred in judgment only in the matter. Moreover, reasonable diligence is inherently a factual matter depending on the circumstances in each case.

For all of these reasons, Tyler's first assignment of error is overruled, and Tiffany's first assignment of error is overruled.

*Tyler's Second Assignment of Error*

{¶54} In Tyler's second assignment of error, he argues that his trial counsel was ineffective for "misinforming" him regarding the permanent custody hearing.

Standard of Review

{¶55} In permanent custody proceedings we apply the same test for ineffective assistance of counsel that we do in criminal cases. *In re J.E.*, 3d Dist. Marion No. 9-17-07, 2017-Ohio-8272, ¶ 22, citing *In re E.C.*, 3d Dist. Hancock No. 5-15-01, 2015-Ohio-2211, ¶ 40, citing *In re Heston*, 129 Ohio App.3d 825, 827 (1st Dist.1998). In order to demonstrate ineffective assistance of trial counsel, an appellant must first show that the trial counsel's performance fell below an objective standard of reasonableness. *In re E.C.* at ¶ 41, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984) and *State v. Bradley*, 42 Ohio St.3d 136, 137 (1989). Then, appellant must demonstrate that but-for trial counsel's errors, the result of the proceeding would have been different. *Id*. The appellant bears the burden of establishing ineffective assistance of trial counsel and, in order to do so, must overcome the strong presumption that licensed attorneys provided competent representation. *Id*., citing *State v. Calhoun*, 86 Ohio St.3d 279, 289 (1995).

Analysis

{¶56} Tyler argues that his counsel was ineffective for misinforming him regarding the final hearing, for failing to request a continuance, and for failing to object to the GAL's report. In analyzing Tyler's arguments, we must begin by again emphasizing that throughout these proceedings Tyler failed to participate and regularly contact his attorney. He did not seem concerned enough to check on the status of his case until either the day before the final permanent custody hearing or the day of the permanent custody hearing.

{¶57} However, it is true that Tyler's attorney informed the trial court that he may have given an "equivocal" response regarding the purpose of the June 4, 2019 hearing when Tyler and his attorney spoke on the day of the hearing or the day prior. While trial counsel certainly should have given Tyler a full and accurate response, in order to find ineffective counsel, we would have to determine that Tyler's equivocation was erroneous *and* prejudicial.

{¶58} Notably, even with Tyler's attorney's statement at the permanent custody hearing, it is difficult to find error when we do not even know exactly what was said between Tyler and his attorney in their phone conversation. The attorney was not even sure what he had said. We *do* know that Tyler was aware that a hearing was occurring. In fact, the caseworker for MCDJFS testified that she believed Tyler and Tiffany were aware of the hearing on the pending permanent custody motion. Tiffany's later-filed affidavit stated that she was aware of the hearing before it

occurred. Thus the record establishes that any alleged confusion claimed by Tyler now could just as easily been as a result of his own lack of interest in this matter expressed through his lack of participation in any of the case plan and his inability to maintain contact with his attorney or with MCDJFS.

{¶59} However, even if we accepted that Tyler's attorney's equivocation was deficient, Tyler would have to demonstrate that it was prejudicial. There is no indication that Tyler was going to be at the hearing regardless of its importance as he stated at the eleventh hour that he had no transportation. Moreover, given Tyler's overall lack of participation in this matter and his seeming disinterest in his children until after permanent custody had been awarded to MCDJFS, we find it hard to see how any other outcome would have been possible here. Therefore, for all of these reasons Tyler's second assignment of error is overruled.

*Tyler's Third Assignment of Error*;
*Tiffany's Second Assignment of Error*

{¶60} In Tyler's third assignment of error, and in Tiffany's second assignment of error, they argue that the trial court's judgment regarding permanent custody was not supported by clear and convincing evidence. Specifically, Tyler argues that MCDJFS failed to prove that any of the factors under R.C. 2151.414(B)(1) were met, and that the evidence presented did not establish that it was in the children's best interests to grant permanent custody of the children to MCDJFS. Tiffany summarily argues that the testimony of the sole witness for

MCDJFS was not sufficient to meet the "clear and convincing" burden of proof. Stated differently, Tiffany argues that the decision was against the weight of the evidence.

Standard of Review

{¶61} An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and *not* substitute its judgment for that of the trial court. (Emphasis sic) *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978).

{¶62} Moreover, issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in

the parties' demeanor and attitude that does *not* translate to the record well." (Emphasis sic)  *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶63} Furthermore, " '[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the [trier-of-fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." ' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting Black's Law Dictionary 1594 (6th ed. 1990).

{¶64} When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley* at ¶ 20, quoting *Tewarson v. Simon,* 9th Dist. Lorain No. 99CA007526, 141 Ohio App.3d 103, 115 (2001)*,* quoting *Thompkins,* 78 Ohio St.3d at 387 quoting *State v.*

*Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983); *accord In re Pittman,* 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶¶ 23–24.

Controlling Statutory Authority

{¶65} Revised Code 2151.414 sets forth the guidelines a trial court must follow when determining a motion for permanent custody. Revised Code 2151.414(A)(1) mandates that the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶66} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of a child to a public agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two-month period. Notably, "the findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, [and] each is independently

sufficient to use as a basis to grant the Agency's motion for permanent custody." *In re M.R.,* 3d Dist. Defiance No. 4–12–18, 2013–Ohio–1302, ¶ 80.

{¶67} In sum, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶68} Once the trial court proceeds to a determination regarding the best interests of the children, R.C. 2151.414(D) contains factors for a trial court to consider. It reads as follows.

> **(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:**
>
> **(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;**
>
> **(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**
>
> **(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more**

**public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;**

**(d)   The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**

**(e)   Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.**

Analysis

{¶69} After the evidence was presented at the permanent custody hearing, the trial court determined that the children had been in the custody of MCDJFS for "I believe it was a year, if not just a little bit longer, and the parents have done nothing affirmative to remedy any of the situations that led to the removal of the children." (Tr. at 26). The trial court continued, "Actually, the parents haven't done anything. They have not seen their children for ten months." (*Id.*) The trial court did not state at that time which factor under R.C. 2151.414(B)(1) it was applying, but the trial court did explicitly find that an award of permanent custody to MCDJFS was in the children's best interests.

{¶70} The trial court's subsequently-filed judgment entries expanded on the trial court's reasoning articulated at the permanent custody hearing, and clarified its ruling. In its entries, the trial court found that the children

**cannot be reunited with the parents within a reasonable time. * * * [B]oth parents have failed to support the child[ren] and have failed to maintain a stable residence or employment. They have made minimal to no efforts to participate in services Ordered by the Court in a Case Plan to remedy the cause for removal of the child from the home. And, the parents last visited with the child[ren] in August of 2018.**

**Therefore, the motion should be granted with respect to Section 2151.414(E).**

**The Court finds, pursuant to Section 2151.414(D) that [] it is in the best interests of the child[ren] that permanent custody be awarded to the Department. The Court finds that there is a suitable [] adoptive home presently being explored, this being the foster home of the child[ren] since [] removal from the parent[s].**

(32019003, Doc. No. 40).

{¶71} On appeal, appellants claim that the trial court erroneously "found" at the permanent custody hearing that the children had been in the temporary custody of the agency for over a year and attempted to "correct" this error in the judgment entries by expanding on its holding and finding that the children could not or should not be placed with their parents within a reasonable time pursuant to R.C. 2151.414(B)(1)(a). Thus appellants claim that at the permanent custody hearing the trial court made a finding under R.C. 2151.414(B)(1)(d), but changed that finding to R.C. 2151.414(B)(1)(a) in its judgment entry.

{¶72} At the outset, we note that at the permanent custody hearing, the trial court did not affirmatively state whether it was entering a finding under R.C. 2151.414(B)(1)(d) or (B)(1)(a) (or even (B)(1)(b) for that matter, which relates to

abandonment). Nevertheless, we emphasize that, as previously stated, findings under R.C. 2151.414(B)(1)(a) and (B)(1)(d) are independent. As long as one was satisfied the other need not be.

{¶73} Regarding appellants' arguments as to the trial court's statements at the permanent custody hearing, it does appear that the trial court may have miscalculated the length of time the children were officially in the temporary custody of MCDJFS based on the date when temporary custody statutorily began. This is likely because the children were in the *care* of MCDJFS dating from the arrest of the appellants on May 21, 2018, but not officially in the temporary custody of MCDJFS until July of 2018.[12] *If* the trial court had rested solely on (B)(1)(d) at the permanent custody hearing, or even mentioned (B)(1)(d) at all at the permanent custody hearing or in the judgment entries, there might have been an issue. However, the trial court's statements at the hearing beyond whether the children had been in the agency's custody for "I believe it was a year," seemed to imply that the children could not or should not be placed with the appellants within a reasonable time, which is what the trial court found in its judgment entries.

{¶74} The trial court emphasized at the permanent custody hearing the appellants' utter lack of progress in this case and their lack of contact with their

---

[12] Revised Code 2151.414 states that "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." Both of these dates would have been in July of 2018.

children and their attorneys. The trial court found that appellants had done nothing to remedy the situation leading to the removal of the children from their care. The trial court's findings at the hearing thus support a finding that the children could not be placed with the appellants within a reasonable time, or should not be placed with the appellants, and this was explicitly found and stated in the trial court's judgment entries on the matter.

{¶75} Moreover, the judgment entries contain a number of statements that were established at the hearing that show the children could not or should not be placed with the appellants within a reasonable time pursuant to R.C. 2151.414(B)(1)(a). The appellants failed to secure housing, failed to notify the agency regarding any secure housing, the appellants failed to secure employment, they failed to visit and interact with the children, and they failed to engage in any activities under the case plan.

{¶76} The appellants certainly demonstrated a lack of commitment to the children, failed to utilize the services available to them through MCDJFS, seemed to be unwilling to provide shelter or other basic necessities, and arguably had abandoned the children. Pursuant to R.C. 2151.011, "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with

the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."[13]

{¶77} Regardless, all of the issues that were discussed, which were largely noted by the trial court at the permanent custody hearing *and* in the judgment entry, establish R.C. 2151.414(E)(1), (4), (10), and (14), any one of which was enough to find that the children could not be placed with the appellants within a reasonable time or should not be placed with the appellants pursuant to R.C. 2151.414(B)(1)(a). Thus appellants' arguments that the first prong of permanent custody was not established by clear and convincing evidence in this matter are not well-taken.

{¶78} We turn next to the best interest factors codified in R.C. 2151.414(D). Although the trial court did not make specific findings regarding individual factors, its judgment entry indicated that it had considered R.C. 2151.414(D) in determining the children's best interests in its entry.

{¶79} In its entry, the trial court had already found that the appellants had essentially no relationship with their children, and that the children were in a position to be adopted. The GAL advocated for permanent custody, and the children needed legally secure placement. The trial court's stated findings are supported by the record and coincide with the best interests factors to be considered pursuant to

---

[13] The trial court noted at the hearing and in its entry that the parents had not been in contact with the children for over ten months, but there was no statutory mention of "abandonment" in the trial court's entry, so appellants do not seem to contest this issue.

R.C. 2151.414(D). Therefore we cannot find that the trial court erred by finding by clear and convincing evidence that it was in the best interests of the children for MCDJFS to be granted permanent custody. Travis's third assignment of error and Tiffany's second assignment of error are overruled.

*Travis's Fourth Assignment of Error*

{¶80} In Travis's fourth assignment of error, he argues that the trial court erred by failing to *sua sponte* continue the permanent custody hearing. Specifically, he contends that with the "equivocation" given by his attorney, and the importance of a permanent custody hearing, the trial court should have continued the matter even absent a motion.

Standard of Review

{¶81} Generally, the decision to grant or deny a continuance is within the sound discretion of the trial judge. *State v. Unger*, 67 Ohio St.2d 65 (1981). However, as no request for a continuance was actually made in this matter, we review it for plain error.

{¶82} For this Court to notice plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial. *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, ¶ 30 (2013), citing *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, ¶ 11, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642; *State v. Lynn*, 129 Ohio

St.3d 146, 2011-Ohio-2722, ¶ 13; Crim.R. 52(B). Moreover, "even when the minimum requirements have been met, a reviewing court should still be conservative in its application of plain-error review, reserving notice of plain error for situations involving more than merely theoretical prejudice to substantial rights." *Steele* at ¶ 30, citing *State v. Long,* 53 Ohio St.2d 91, 94 (1978). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus.

Analysis

{¶83} Typically, where a motion for a continuance is actually made, a trial court has a number of factors it may consider when determining the motion. These factors include: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. *State v. Unger*, 67 Ohio St.2d 65, 67-68 (1981). A trial court is also permitted to consider judicial economy.

{¶84} As no request for a continuance was made in this matter, the trial court did not conduct any analysis regarding the stated factors. Nevertheless, based on the record the trial court could have readily determined that a continuance would have been inconvenient, that it would have been dilatory, that it would not have been helpful given the appellants' penchant for not attending hearings, and that the need for a continuance was caused by the appellants own negligence. These reasons would all support the trial court denying a continuance *if* one had actually been requested. Under the facts and circumstances of this case, we cannot find that the trial court was required to *sua sponte* grant a continuance of the permanent custody hearing. Plain error is to be recognized with the utmost caution, and we decline to find it here. Therefore, Tyler's fourth assignment of error is overruled.

*Tyler's Fifth Assignment of Error*

{¶85} In Tyler's fifth assignment of error, he argues that the trial court erred when it denied his motion for relief from judgment.

{¶86} In this case, Tyler filed a motion for relief from judgment on the same day that he filed his notice of appeal. The trial court actually did not have a chance to rule on Tyler's motion for relief from judgment before the appeal was perfected. Thus any claim by Tyler that the trial court erred by "denying" his motion for relief from judgment is not ripe for appeal because the motion has not actually been ruled

upon according to the record before this Court. Therefore this assignment of error is not well-taken.

*Conclusion*

{¶87} For the foregoing reasons, Tiffany's and Tyler's assignments of error are overruled and the judgments of the Mercer County Common Pleas Court, Juvenile Division, are affirmed.

**Judgments Affirmed**

**WILLAMOWSKI, J., concurs in Judgment Only.**

**/jlr**


**ZIMMERMAN, J., oncurring in part, dissenting in part.**

{¶88} I respectfully dissent from the lead decision affirming the trial court's decisions granting permanent custody of C.H. and T.H. to MCDJFS. Instead, I would conclude that the trial court failed to comply with the statutory requirements set forth in R.C. 2151.414 and 2151.419 when it granted permanent custody of C.H. and T.H. to MCDJFS. However, before addressing the reasons from which I would reverse this case, I must first address my concerns with the notice of the permanent-custody hearing that was provided to Tiffany and Tyler.

{¶89} While I concur with the lead opinion's resolution of Tiffany's and Tyler's arguments challenging the notice of the permanent-custody hearing, I

disagree with its reasons for doing so. Thus, I am writing separately on this issue to highlight the deficiencies with the notice in this case.

{¶90} Contrary to the lead opinion's analysis, I would conclude that MCDJFS did not follow the service requirements of R.C. 2151.29 or Juv.R. 16. That is, I do not believe that the agency properly invoked the service-by-publication rule because MCDJFS exercised minimal efforts—efforts that do not demonstrate the diligence, care, or attention, as might be expected from a person of ordinary prudence and activity to locate a person—to locate Tiffany and Tyler. Moreover, I diverge from the lead opinion's analysis that MCDJFS's publication comports with the requirements of Juv.R. 16—a rule with which the agency must strictly comply. Nevertheless, because I think that Tiffany and Tyler waived these errors, I join the lead opinion's resolution of this issue.

{¶91} "[T]he State may not deprive parents of their parental rights without due process of law." *In re J.T.*, 4th Dist. Jackson No. 18CA9, 2019-Ohio-465, ¶ 29, citing *In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, ¶ 16, *In re A.G.*, 4th Dist. Athens No. 14CA28, 2014-Ohio-5014, ¶ 12, and *In re M.H.*, 4th Dist. Vinton No. 11CA683, 2011-Ohio-5140, ¶ 49-50. "Although 'due process' lacks precise definition, courts have long held that due process requires both notice and an opportunity to be heard." *Id.* at ¶ 30, citing *In re In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 12, citing *Hagar v. Reclamation Dist. No. 108*, 111 U.S.

701, 708, 4 S.Ct. 663 (1884), and citing *Caldwell v. Carthage*, 49 Ohio St. 334, 348 (1892). "'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.*, quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652 (1950), and citing *In re Thompkins* at ¶ 13.

{¶92} Importantly, "given the importance of the parent-child bond, 'a Juvenile Court cannot make a valid order changing temporary commitment of a dependent child to a permanent one without a service of notice upon the parent of the child, strictly in accordance with the law.'" *Id.* at ¶ 31, quoting *In re Frinzl*, 152 Ohio St. 164, 173 (1949), and citing *In re S.S.*, 9th Dist. Wayne No. 10CA0010, 2010-Ohio-6374, ¶ 43, quoting *In re Cowling*, 72 Ohio App.3d 499, 500-501 (9th Dist.1991). "Accordingly, if a court fails to serve a summons to a parent in compliance with the procedural rules, then it lacks personal jurisdiction over the parent." *Id.*, citing *In re Z.H.*, 9th Dist. Summit No. 26844, 2013-Ohio-3904, ¶ 14. "'"It is rudimentary that in order to render a valid personal judgment, a court must have personal jurisdiction over the defendant."'" *Id.*, quoting *State ex rel. Doe v. Capper*, 132 Ohio St.3d 365, 2012-Ohio-2686, ¶ 13, quoting *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984). "'"[A] judgment rendered without proper service or

entry of appearance is a nullity and void.'"'" *Id.*, quoting *State ex rel. Ballard v. O'Donnell*, 50 Ohio St.3d 182, 183-184 (1990), quoting *Lincoln Tavern, Inc. v. Snader*, 165 Ohio St. 61, 64 (1956), and citing *Knickerbocker Properties, Inc. XLII v. Delaware Cty. Bd. of Revision*, 119 Ohio St.3d 233, 2008-Ohio-3192, ¶ 20 and *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 87 Ohio St.3d 363, 366-367 (2000). "'Thus, a valid court judgment requires both proper service under the applicable Ohio rules and adequate notice under the Due Process Clause.'" *Id.*, quoting *In re A.G.*, 4th Dist. Athens No. 14CA28, 2014-Ohio-5014, ¶ 14, citing *Samson Sales, Inc. v. Honeywell, Inc.*, 66 Ohio St.2d 290, 293 (1981).

{¶93} "When the state seeks to interfere with a parent's liberty interest in the care, custody, and management of his or her child, the Due Process Clause requires the state to '*attempt* to provide actual notice' to the parents." (Emphasis sic.) *Id.* at ¶ 32, quoting *In re Thompkins* at ¶ 14, citing *Dusenbery v. United States*, 534 U.S. 161, 170, 122 S.Ct. 694 (2002). "Due process does not, however, require the state to undertake '"heroic efforts"' to provide actual notice." *Id.*, quoting *In re Thompkins* at ¶ 14, quoting *Dusenbery* at 170. Moreover, due process does not require a parent to receive actual notice before the State may permanently sever the parent-child relationship; rather, due process is satisfied "if the state employs means that are 'reasonably calculated' to inform the parent of the proceeding involving his or her child." *Id.*, citing *In re Thompkins* at ¶ 14 and *In re A.G.*, 139 Ohio St.3d 572,

2014-Ohio-2597, ¶ 64. The State exercises means that are reasonably calculated to inform the parent of the proceeding involving his or her child if it exercises "'reasonable diligence in attempting to notify [parents] that [their] parental rights [are] subject to termination.'" *Id.*, quoting *In re Thompkins* at ¶ 15, and citing *In re S.S.* at ¶ 49.

{¶94} Generally, "'reasonable diligence' means '"[a] fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity."'" *Id.* at ¶ 33, quoting *In re Thompkins* at ¶ 25, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 332 (1983), quoting *Black's Law Dictionary* 412 (5th Ed.1979). "'[W]hat constitutes reasonable diligence will depend on the facts and circumstances of each particular case.'" *Id.*, quoting *Sizemore* at 332. "Essentially, however, '"[r]easonable diligence requires taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a [person's] address."'" *Id.*, quoting *In re Thompkins* at ¶ 25, quoting *Sizemore* at 332. "'"Minimal efforts do not constitute 'reasonable diligence;' rather it is demonstrated by such diligence, care, or attention as might be expected from a person of ordinary prudence and activity."'" *Id.*, quoting *In re S.S.* at ¶ 49, quoting *Cowling* at 502.

{¶95} "'[S]teps taken in the effort to exercise reasonable diligence might include consulting a city directory, examining government records, or making inquiries of possible acquaintances of the person sought.'" *Id.* at ¶ 34, quoting *In re Thompkins* at ¶ 26, citing *Sizemore* at 332. "These steps are not, however, 'mandatory.' Instead, the steps 'exemplify that reasonable diligence requires [the use of] common and readily available sources' in the search." *Id.*, quoting *In re Thompkins* at ¶ 26.

{¶96} R.C. 2151.414, which governs permanent-custody motions, provides, in its relevant part, that, "the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action." R.C. 2151.414(A)(1). Importantly, the statute requires the notice to "contain a full explanation that the granting of permanent custody permanently divests the parents of their parental rights, a full explanation of their right to be represented by counsel and to have counsel appointed * * * if they are indigent, and the name and telephone number of the court employee designated by the court * * * to arrange for the prompt appointment of counsel for indigent persons." *Id.*

{¶97} R.C. 2151.29 requires service to be made by delivering a copy to the person summoned or by leaving a copy at the person's usual place of residence. However,

> [i]f the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail. If the person to be served is without the state but the person can be found or the person's address is known, or the person's whereabouts or address can with reasonable diligence be ascertained, service of the summons may be made by delivering a copy to the person personally or mailing a copy to the person by registered or certified mail.

R.C. 2151.29. Moreover, the statute provides that "[w]henever it appears by affidavit that after reasonable effort the person to be served with summons cannot be found or the person's post-office address ascertained," service must be made by publication in a newspaper of "general circulation throughout the county." *Id.* "Service by publication thus 'is reserved for those cases in which the residence of the parent is unknown and is not ascertainable with reasonable diligence.'" *In re J.T.* at ¶ 38, quoting *In re R.P.*, 9th Dist. Summit No. 26271, 2012-Ohio-4799, ¶ 18, and citing *In re R.L.P.*, 12th Dist. Butler No. CA2017-01-012, 2017-Ohio-7359, ¶ 19. "Service by publication is a method of last resort." *In re Miller*, 33 Ohio App.3d 224, 226 (8th Dist.1986). *See also In re J.T.* at ¶ 38. When service is made by publication in a newspaper of general circulation throughout the county, the summons must "state the substance and the time and place of the hearing, which shall be held at least one week later than the date of the publication." R.C. 2151.29.

{¶98} Likewise, Juvenile Rule 16(A) provides guidelines for service by publication when the residence of a party is unknown and cannot be ascertained with reasonable diligence. That rule provides, in relevant part, that "[t]he

publication shall contain the name and address of the court, the case number, the name of the first party on each side, and the name and last known address, if any, of the person or persons whose residence is unknown." Juv.R. 16(A). "The publication shall also contain a summary statement of the object of the complaint and shall notify the person to be served that the person is required to appear at the time and place stated," which "shall not be less than seven days after the date of publication." *Id.*

{¶99} According to the record in this case, C.H. and T.H. were removed from their home on May 21, 2018 after Tiffany and Tyler were arrested and subsequently incarcerated in the Mercer County jail. (*See* Case No. 32019002, Doc. Nos. 1, 33); (Case No. 32019003, Doc. Nos. 1, 33). The only address for Tiffany or Tyler contained in the record after their release from incarceration was at a campground, specifically "mailing address 222 Sycamore Street, Kenton, Ohio, 43326, physical address Lot 13, Salisbury Park, Kenton, Ohio." (Case No. 32019002, Doc. No. 25); (Case No. 32019003, Doc. No. 25).

{¶100} When MCDJFS filed its motions for permanent custody on May 13, 2019, service was requested to be made on Tiffany and Tyler at the campground—their last known address. (*Id.*); (*Id.*). On May 16, 2019, a deputy sheriff attempted to serve the motions by personal service but was "[u]nable to locate lot number." (Case No. 32019002, Doc. Nos. 28, 29, 30, 31); (Case No. 32019003, Doc. Nos. 28,

29, 30, 31). Without taking any additional steps to notify Tiffany or Tyler personally or by mail, MCDJFS filed motions for service by publication on May 23, 2019. (Case No. 32019002, Doc. No. 32); (Case No. 32019003, Doc. No. 32). The motions were accompanied by affidavits, which state that the current address of the Tiffany and Tyler is unknown, and that it could not be ascertained with reasonable diligence. (Case No. 32019003, Doc. No. 33); (Case No. 32019003, Doc. No. 33). The affidavits include a background of the case, stating that Tiffany and Tyler did not provide a valid address to law enforcement, to MCDJFS, or the Mercer County Child Support Enforcement Agency. (*Id.*); (*Id.*). In addition, the affidavits state that (separate from the attempted-personal service of the permanent-custody motion) a law enforcement officer with the Kenton Police Department attempted to locate Tiffany and Tyler at the Salisbury Park address on an unrelated matter but was unable to locate them there. (*Id.*); (*Id.*).

{¶101} Ultimately, the trial court granted MCDJFS's motions on May 24, 2019 and service was made by publication the following day. The publication for C.H. provides as follows:

**IN THE COMMON PLEAS COURT OF MERCER COUNTY, OHIO JUVENILE DIVISION**

IN THE MATTER OF: C.H. an alleged neglected/dependent child.
Case No. 32019002.

**NOTICE BY PUBLICATION**
**(O.R.C. 2151.29)**

To: Tiffany Renee H[.] and Tyler H[.], parents of C.H., D.O.B. 8/3/2016.

The Mercer County Department of Job and Family Services has filed a Motion for Permanent Custody regarding the child, C.H., D.O.B. 8/3/2016, in the above captioned case. The motion requests that Permanent Custody of the child be granted to the Mercer County Department of Job and Family Services.

Tiffany Renee H[.], Tyler H[.] and the unknown father of the child **are to be personally present** in the Mercer County Juvenile Court, Mercer County Courthouse, Celina, Ohio, at 2:30 P.M. on June 4, 2019. Should they fail to appear at that time they may lose valuable rights with regard to the child. His attention is directed to the following notice.

**NOTICE**

Notice to all parties: Each party to this proceeding has the right to be represented by counsel, to be appointed by the Court in the event that the party is unable to afford counsel. Any party desiring legal assistance in this matter should contact Penny Nieport, Deputy Clerk of the Mercer County Juvenile Court, at 419-586-2418.

(Emphasis sic.) (Case No. 32019002, Doc. No. 38).[14] Subsequent to the publication, the cases proceeded to a permanent-custody hearing on June 4, 2019. Though their attorneys were present, neither Tiffany nor Tyler attended the hearing. At the permanent-custody hearing, Tiffany's trial counsel informed the trial court that she had not been in contact with Tiffany despite telling her of the need to prepare for the hearing. According to Tiffany's trial counsel, she thought that she gave Tiffany a "sticky note with the next court date on it" when Tiffany appeared

---

[14] The publication regarding T.H. includes the same information, the only differences being T.H.'s personal identifiers. (*See* Case No. 32019003, Doc. No. 38).

at the previous hearing. (June 4, 2019 Tr. at 9). Nevertheless, Tiffany's trial counsel did *not* object to the inadequacy of the notice.

{¶102} Further, Tyler's trial counsel informed the trial court that he spoke "with him on the phone" that day but that neither he nor Tiffany could attend the hearing because they did not have transportation. (*Id.* at 7). According to Tyler's trial counsel, Tyler "said from the last hearing at which he was attending he knew about the [permanent-custody] hearing * * * ." (*Id.*). However, Tyler's trial counsel clarified for the trial court that Tyler (either that day or the day prior) "asked [him] about th[e] hearing and whether it was for permanent custody" to which Tyler's trial counsel responded with an "equivocal" answer. (*Id.* at 22). Tyler's trial counsel further stated that while he was "satisfied from the statement of the [caseworker] that they knew it was permanent custody," "[t]hey might have gotten an ambiguous answer from [him] over the phone, however." (*Id.* at 23). Importantly, Tyler's trial counsel did *not* object to the inadequacy of the notice or seek a continuance.

{¶103} Based on my review of the record, I would conclude that Tiffany and Tyler did not receive proper notice of the permanent-custody hearing. Specifically, I do not think that MCDJFS attempted to serve Tiffany and Tyler as it is required to do by R.C. 2151.29 or Juv.R. 16—namely, MCDJFS's efforts in attempting to serve Tiffany or Tyler with notice that they face the termination of their parental rights were neither reasonable nor diligent. *Compare In re J.T.*, 2019-Ohio-465, at ¶ 48

(concluding that the Agency "did not exercise reasonable diligence in attempting to serve Appellant with notice that she faced the termination of her parental rights"). That is, the steps which MCDJFS employed to locate Tiffany and Tyler are not the steps which a person of ordinary prudence would reasonably expect to be successful in locating Tiffany and Tyler. *Compare In re Cooper*, 8th Dist. Cuyahoga No. 79899, 2002 WL 568192, *3 (Apr. 11, 2002) ("Despite her claim that she used reasonable diligence to locate Cooper, the record demonstrates Schwarz failed to take the steps which a person of ordinary prudence would reasonably expect to be successful.").

{¶104} R.C. 2151.29 requires that service be made by delivering a copy to the person summoned or by leaving a copy at the person's usual place of residence. "If neither of these two options is practical, the statute provides for service by either registered or certified mail." *In re S.S.*, 2010-Ohio-6374, at ¶ 14. "Thus, '[f]or proper service, the parents must be notified of the permanent custody motion and the initial permanent custody hearing by one of three methods: personal service, service by certified or registered mail (if the parent's whereabouts cannot be discerned after reasonable diligence), or—if both of those methods fail—by publication.'" *Id.* at ¶ 18, quoting *In re Keith Lee P.*, 6th Dist. Lucas No. L-03-1266, 2004-Ohio-1976, ¶ 8. *See In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, at ¶ 24 (concluding that "the board complied with the rules by attempting to

-51-

personally serve [the father] at the Dayton address, by attempting to serve him by certified mail at the Columbus address, and by publishing a notice in the Daily Court Reporter in Montgomery County").

{¶105} Here, the totality of MCDJFS's efforts to serve Tiffany and Tyler notice that they were facing the termination of their parental rights consisted of a deputy sheriff (on one occasion) attempting to personally serve them at their last-known place of residence by travelling to the campground and returning the notice after he was "unable to locate the lot #."  (Case No. 32019002, Doc No. 30); (Case No. 32019003, Doc No. 30).  There is no indication whether the deputy sheriff made any further attempts to locate Tiffany or Tyler or whether he inquired with anyone at the campground as to their whereabouts.  *Compare In re Thompkins* at ¶ 4 (noting that the process server ascertained that the father "had not resided at the Dayton address for almost one year").  After the deputy sheriff was unable to personally locate Tiffany or Tyler, MCDJFS made no further attempt to locate or serve them— namely, it did not attempt to send a letter by certified or registered (or even ordinary) mail or attempt to contact Tiffany's or Tyler's family or friends.  *See In re J.T.* at ¶ 34 (noting that the exercise of reasonable diligence includes "'making inquiries of possible acquaintances of the person sought'"), quoting *In re Thompkins* at ¶ 26, citing *Sizemore*, 6 Ohio St.3d at 332.  The only other evidence in the record that MCDJFS attempted to locate Tiffany and Tyler is the averment that it was informed

that a law enforcement officer with the Kenton Police Department could not locate Tiffany or Tyler at the campground.

{¶106} Moreover, MCDJFS did not attempt to perfect service by certified or registered mail (despite possessing an existing mailing address for Tiffany and Tyler) before resorting to service by publication. *See In re J.T.* at ¶ 48 (noting that "the record does not contain any evidence that [the mother's] address was attempted and not known"). Because the record reflects that MCDJFS ascertained a mailing address for Tiffany and Tyler, it was required to attempt to serve Tiffany and Tyler by certified or registered mail. *Accord* R.C. 2151.29 ("A copy of the summons and the complaint, indictment, or information *shall* be sent by registered or certified mail to the last known address of the person summoned unless it is shown by affidavit that a reasonable effort has been made, without success, to obtain such address."). *See In re J.T.* at ¶ 50 ("Because [the agency] had in fact ascertained [the mother's] address, R.C. 2151.29 required the state to serve [her] either personally or by registered or certified mail."). *See also id.* at ¶ 40 (noting that the Supreme Court of Ohio has concluded that "[s]ervice by publication is a valid means of notifying a parent of a permanent custody proceeding when a children services agency attempts certified mail and the postal service returns the mailing as, 'Attempted Not Known.'"), citing *In re Thompkins* at ¶ 2.

{¶107} Notwithstanding MCDJFS's failure to obtain returned certified or registered mail as undeliverable to the mailing address that Tiffany and Tyler provided to MCDJFS, MCDJFS averred that "the present addresses of Tiffany * * * and Tyler * * * are unknown to the Affiant, and cannot with reasonable diligence be ascertained." (Case No. 32019002, Doc. No. 33); (Case No. 32019003, Doc. No. 33). *Compare In re J.T.* at ¶ 48-50 (noting that, notwithstanding "[t]he caseworker's affidavit for service by publication avers that [the mother's] address is 'unknown to affiant and cannot with reasonable diligence be ascertained,'" the record reflected that the agency "did in fact ascertain" her mailing address). MCDJFS's averment is belied by the record. *In re R.P.*, 2012-Ohio-4799, at ¶ 18 ("'Service by publication based upon a false affidavit is defective.'"), quoting *Dragich v. Dragich*, 10th Dist. Franklin No. 86AP-178, 1986 WL 10409, *1 (Sept. 16, 1986), and citing *In re Miller*, 33 Ohio App.3d at 226.

{¶108} Indeed, according to Tiffany's trial counsel, Tiffany "indicated to [her that] she was residing at the Salisbury Park camp ground on Site 13. Though, she could not receive mail there, she did get (inaudibles) address for mail that to a location she's not residing at to receive mail." (June 4, 2017 Tr. at 6). However, Tiffany's trial counsel further informed the court that she "received mail back." (*Id.*). Yet, Tyler's trial counsel informed the trial court that, when he spoke with Tyler on the day of the permanent-custody hearing, Tyler "said that he was at the

camp ground, [and] gave [him] a second address there that he (inaudibles) mailing address only." (*Id.* at 7).

{¶109} Moreover, although the MCDJFS caseworker testified that she spoke with Tyler's mother on May 23, 2019 who informed her that she asked Tiffany and Tyler to leave the Salisbury campground residence, there is no evidence that MCDJFS took any further steps to ascertain the whereabouts of Tiffany or Tyler. (*See id.* at 15-16). *Compare In re Cooper*, 2002 WL 568192, at *3 (concluding that the Agency did not use reasonable efforts to locate the father because it "failed to visit the home to investigate whether Mr. Cooper, Sr. knew where his son was residing"). There is no evidence in the record that the caseworker asked Tyler's mother where Tiffany and Tyler relocated after his mother informed her that she asked them to leave her residence. Rather, the caseworker testified that Tyler's mother informed her "that if she got a phone number for them, she would call [her] with it and she ha[d] not called [her] with that, with the phone number." (*Id.* at 18). There is no evidence in the record whether the caseworker made any attempt to follow up with Tyler's mother or made any further effort to locate them. *See In re Cooper* at *3; *In re Miller* at 227 (concluding that the Agency did not engage in reasonable diligence to locate the mother because, despite awareness that the child "knew where her mother lived" and knew her telephone number, "[n]o evidence

was presented that [the Agency] asked [the child] for her mother's address or phone number").

{¶110} "Under R.C. 2151.29, service by publication is proper '[w]henever it appears by affidavit that after reasonable effort the person to be served with summons cannot be found or the person's post-office address ascertained.'" *In re J.T.*, 2019-Ohio-465, at ¶ 51, quoting R.C. 2151.29. Because MCDJFS exercised minimal efforts—efforts that do not demonstrate such diligence, care, or attention, as might be expected from a person of ordinary prudence and activity to locate a person—and because the record reflects that MCDJFS ascertained a mailing address (but did not attempt to mail the notice), I do not believe that the agency properly invoked the service-by-publication rule. *See id.* ("Because the evidence shows that [the mother's] post-office address not only could, but was, ascertained, we do not think the agency properly invoked the service-by-publication rule"), citing *Dragich*, 1986 WL 10409, at *1 (Sept. 16, 1986) and *PHH Mtge. Corp. v. Prater*, 133 Ohio St.3d 91, 2012-Ohio-3931, ¶ 12, quoting *Cent. Trust Co., N.A. v. Jensen*, 67 Ohio St.3d 140, 143 (1993) (stating that "[w]hen a party's address is known or easily ascertainable and the cost of notice is little more than that of a first-class stamp, the balance will almost always favor notice by mail over publication"). *See also id.* ("Instead, according to [*In re*] *Thompkins*, the agency first should have attempted

service by certified mail."); *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, at ¶ 24.

{¶111} Further, if service by publication were proper, I do not believe that the publications in this case comport with the requirements of Juv.R. 16. *Compare In re J.T.* at ¶ 48 (concluding that service by publication did not comply "with the due process requirement that service be reasonably calculated to provide her with notice and an opportunity to be heard at the permanent custody hearing"). Although the publications contain the name of the juvenile court, they do not contain the address for the court as they are required include under Juv.R. 16. Nor do the publications reflect the last known address of Tiffany and Tyler as they are required to include under the rule. "[T]he requirements of Juv.R. 16(A) are *mandatory* and *shall* be strictly enforced." (Emphasis added.) *In re R.P.*, 2012-Ohio-4799, at ¶ 11, quoting *In re Miller* at 226, and citing *Anstaett v. Benjamin*, 1st Dist. Hamilton No. C-010376, 2002-Ohio-7339, ¶ 14, citing *Moor v. Parsons*, 98 Ohio St. 233, 238 (1918). *See also In re Thompkins* at ¶ 34 ("Because service by publication is a method of last resort, the requirements of Juv.R. 16(A) are to be strictly enforced."). Therefore, the failure to include this information results in defective service. *See In re Miller* at 226. ("The failure to include [Juv.R. 16] information in the publication notice results in defective service."), citing *In re Wilson*, 21 Ohio App.3d 36, 39-40

(6th Dist.1984), *Demianczuk* at 246, and *Northland Dodge, Inc. v. Damachi*, 56 Ohio App.2d 262, 263-264 (10th Dist.1978).

**{¶112}** Further, in addition to the missing elements, the publications twice incorrectly identify Tiffany's surname. And, the publications indicate that it is directed to Tiffany, Tyler, "and the unknown father of the child" even though Tyler was definitively established to be the father of C.H. and T.H. at the time of the publications. (Case No. 32019002, Doc No. 38); (Case No. 320190003, Doc. No. 38).

**{¶113}** Nevertheless, despite my conclusion that Tiffany and Tyler did not receive proper notice of the permanent-custody hearing, Tiffany and Tyler waived these deficiencies for purposes of appeal because they failed to argue to the trial court that the notice was inadequate. *Accord In re X.Q.*, 8th Dist. Cuyahoga No. 107851, 2019-Ohio-1782, ¶ 18 (concluding that the mother's "attorney was present and did not argue the issue of improper notice, thus waiving the issue"); *In re D.H.*, 177 Ohio App.3d 246, 2008-Ohio-3686, ¶ 38 (8th Dist.) ("Here, the mother's attorney, after receiving notice of the hearing, appeared before the court and never raised any argument as to improper notice to her client, thereby waiving any argument on appeal."). *See In re Jennifer L.*, 6th Dist. Lucas No. L-97-1295, 1998 WL 230808, *3 (May 1, 1998) ("We are greatly troubled by the circumstances that occurred in this case. However, we find that the father waived his arguments

relating to personal jurisdiction, and his ability to challenge the temporary custody order of the trial court as void when counsel who appeared on his behalf at the permanent custody hearings did not argue that the trial court had no jurisdiction to consider a motion for permanent custody against him."); *In re M.F.*, 3d Dist. Henry No. 7-15-06, 2015-Ohio-4224, ¶ 22 (concluding that the father waived any objection to inadequacy of the notice because he failed to argue to the trial court that the notice was inadequate under R.C. 2151.414(A)"). "'The issue of notice is waived on appeal when the parent's attorney is present for various permanent custody hearings and never argues improper notice.'" *In re I.G.*, 3d Dist. Marion No. 9-13-43, 2014-Ohio-1136, ¶ 17, quoting *In re Keith Lee P.*, 2004-Ohio-1976, at ¶ 9, citing *In re Billingsley*, 3d Dist. Putnam Nos. 12-02-07 and 12-02-08, 2003-Ohio-344, ¶ 10 and *In re Jennifer L.* at *3. *See also In re M.F.* at ¶ 20.

{¶114} Likewise, "[t]he parent's attorney's statement to the juvenile court that he or she communicated with the parent who failed to appear, proves that the parent had constructive notice of the permanent custody hearing." *In re Keith Lee P.* at ¶ 8, citing *In re Broadzenski*, 5th Dist. Stark No. 1997CA00412, 1998 WL 753190, *2 (Oct. 26, 1998). In addition to failing to object to the inadequacy of the notice, it can be argued that Tiffany and Tyler had constructive notice of the permanent-custody hearing. *Accord In re D.H.* at ¶ 37-38 (concluding that the mother's trial attorney's representation that she communicated with the mother was

"clear that the mother had notice of the permanent-custody hearing"). That is, Tiffany's trial counsel informed the trial court that she provided Tiffany with a "sticky note" indicating the date of the permanent-custody hearing when Tiffany was present at the previous hearing. Further, although (standing alone) I do not consider it to be timely notice, Tyler's trial counsel informed the trial court that he communicated with his client earlier that day about the hearing. And, Tyler's trial counsel informed the trial court that Tyler knew of the permanent-custody hearing at the previous hearing.

{¶115} Having addressed my concerns with the notice of the permanent-custody hearing provided to Tiffany and Tyler, I now turn to the trial court's decisions granting permanent custody of C.H. and T.H. to MCDJFS. Here, I would conclude that the trial court's entries granting permanent custody of C.H. and T.H. to MCDJFS are defective. When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) apply, and (2) the trial court must find that permanent custody is in the best interest of the child. *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10. *See also In re*

Case Nos. 10-19-10, 11, 12, 13

*Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994).  R.C. 2151.414(B)(1) provides, in

relevant part, that a trial court

> may grant permanent custody of a child to a movant if the court
> determines at the hearing held pursuant to division (A) of this section,
> by clear and convincing evidence, that it is in the best interest of the
> child to grant permanent custody of the child to the agency that filed
> the motion for permanent custody and that any of the following apply:
>
> (a)   The child is not abandoned or orphaned, has not been in the
> temporary custody of one or more public children services agencies
> or private child placing agencies for twelve or more months of a
> consecutive twenty-two-month period, * * * and the child cannot be
> placed with either of the child's parents within a reasonable time or
> should not be placed with the child's parents.
>
> (b)   The child is abandoned.
>
> (c)   The child is orphaned, and there are no relatives of the child who
> are able to take permanent custody.
>
> (d)   The child has been in the temporary custody of one or more
> public children services agencies or private child placing agencies for
> twelve or more months of a consecutive twenty-two-month period *
> * * .
>
> (e)   The child or another child in the custody of the parent or parents
> from whose custody the child has been removed has been adjudicated
> an abused, neglected, or dependent child on three separate occasions
> by any court in this state or another state.
>
> For the purposes of division (B)(1) of this section, a child shall be
> considered to have entered the temporary custody of an agency on the
> earlier of the date the child is adjudicated pursuant to section 2151.28
> of the Revised Code or the date that is sixty days after the removal of
> the child from home.

R.C. 2151.414(B)(1).

-61-

{¶116} "Specifically concerning R.C. 2151.414(B)(1)(a), '[i]f one or more of the factors enumerated in R.C. 2151.414(E) is found to be present by clear and convincing evidence, the trial court shall find that the child cannot be placed with the parents within a reasonable period of time or should not be placed with the parents.'" *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 13, quoting *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 54, citing *In re Goodwin*, 3d Dist. Shelby No. 17-08-12, 2008-Ohio-5399, ¶ 23.

R.C. 2151.414(E) provides, in relevant part:

(E) In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

R.C. 2151.414(E)(1), (4).

{¶117} "'If the trial court determines that any provision enumerated in R.C. 2151.414(B)(1) applies,' it must proceed to the second prong of the test, which requires the trial court to 'determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest.'" *In re K.M.S.*, 3d Dist. Marion No. 9-15-37, 2017-Ohio-142, ¶ 23, quoting *In re A.F.* at ¶ 55, and citing R.C. 2151.414(B)(1). "The best interest determination is based on an analysis of R.C. 2151.414(D)." *Id.*

{¶118} "Under R.C. 2151.414(D)(1), the trial court is required to consider all relevant factors listed in that subdivision, as well as any other relevant factors." *Id.* at ¶ 24, citing *In re H.M.*, 3d Dist. Logan Nos. 8-13-11, 8-13-12, and 8-13-14, 2014-Ohio-755, ¶ 27. The R.C. 2151.414(D)(1) factors include:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children

-63-

services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *;

(d)   The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)   Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).  "Under this test, the trial court considers the totality of the circumstances when making its best interest determination and no single factor is given greater weight than others by the statute."  *In re K.M.S.* at ¶ 24, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56 and *In re Z.Y.*, 8th Dist. Cuyahoga No. 86293, 2006-Ohio-300, ¶ 13.

{¶119} If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence.  *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985) and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986).  "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."  *In re S.G.*, 2015-Ohio-2306, at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶120}** It is not clear which R.C. 2151.414(B)(1) factor the trial court relied on when it granted permanent custody of C.H. and T.H. to MCDJFS. *Compare In re Esparza*, 3d Dist. Marion No. 9-06-25, 2007-Ohio-113, ¶ 30 ("We also note that the trial court's journal entry fails to indicate which section of R.C. 2151.414(B) the trial court applied when it granted permanent custody to MCCSB."). At the permanent-custody hearing, the trial court found that C.H. and T.H. had been in the custody of MCDJFS for 12 or more months. (*See* June 4, 2019 Tr. at 26). But, the trial court did not indicate whether that was within a consecutive 22-month period. In its entry granting permanent custody of C.H. and T.H. to MCDJFS, the trial court did not explicitly state which R.C. 2151.414(B)(1) factor that it found applicable to the cases or determine the length of time that C.H. and T.H. had been in the custody of MCDJFS. The trial court also failed to make a determination that Tiffany or Tyler abandoned or orphaned C.H. or T.H, or whether C.H. or T.H. had been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. *Compare In re Esparza* at ¶ 30 ("Also, the trial court failed to make a determination that either Mother or Feliciano abandoned or orphaned the boys.").

**{¶121}** Although there is no requirement that a trial court explicitly reference R.C. 2151.414(B)(1) in its permanent-custody decision, it must be discernible from the entry on which factor the trial court was relying. *See In re Johnson*, 10th Dist.

Franklin Nos. 03AP-1264 and 03AP-1265, 2004-Ohio-3886, ¶ 23. *Compare In re Esparza* at ¶ 30-33 (concluding that, although the trial court did not indicate which R.C. 2151.414(B)(1) section it applied in granting permanent custody to the agency, the trial court applied R.C. 2151.414(B)(1)(a) because the record reflected that the children were not in the temporary custody of the agency for more than 12 months); *In re Dyal*, 4th Dist. Hocking No. 01CA12, 2001 WL 925423, *6 (Aug. 9, 2011), fn.3 (concluding that "the judgment entry as a whole reflects that the trial court applied the appropriate statute, R.C. 2151.414" even though the trial court did not explicitly state that permanent custody would serve the child's best interests). Therefore, because the trial court did not find R.C. 2151.414(b), (c), or (e) to be applicable, we must determine whether the trial court could have applied R.C. 2151.414(B)(1)(a) or (d). *Accord In re Esparza* at ¶ 30

{¶122} For purposes of R.C. 2151.414(B)(1), "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." *Id.* at ¶ 25. Based on the record in these specific cases, it appears that the only R.C. 24151.414(B)(1) factor applicable to this case is R.C. 2151.414(B)(1)(a).[15] Specifically, based on the information contained in this record, C.H. and T.H. were removed from their home

---

[15] The documents related to C.H.'s and T.H.'s initial removal and adjudication in 2018 are not available to this court in this record.

on May 21, 2018, and 60 days after that was July 20, 2018. According to the information in this record, C.H. and T.H. were adjudicated neglected and dependent on July 12, 2018. All of those dates are inside 12 months prior to the time the MCDJFS filed its motions on May 13, 2019 requesting permanent custody of C.H. and T.H.

{¶123} Therefore, the trial court's finding at the permanent-custody that C.H. and T.H. had been in the custody of MCDJFS for 12 or more months hearing was in error. *See In re Franklin*, 3d Dist. Marion No. 9-06-12, 2006-Ohio-4841, ¶ 15. Nevertheless, the trial court's erroneous finding at the permanent-custody hearing is harmless error since the trial court made the necessary finding under R.C. 2151.414(B)(1)(a)—that C.H. and T.H. cannot be placed with either of their parents within a reasonable time or should not be placed with their parents—in its entry granting permanent custody of C.H. and T.H. to MCDJFS and the record clearly and convincingly supports that C.H. and T.H. had not been in the custody of MCDJFS for 12 or more months of a consecutive 22-month period.[16] *See id.* at ¶ 16.

---

[16] From the outset of these cases, the State and the trial court refer to Tyler as the "putative father." The term "putative father" is not defined by Chapter 2151; rather, it is defined in Chapter 3107—the chapter relative to adoptions—as "a man * * * who may be a child's father" who (1) "is not married to the child's mother at the time of the child's conception or birth"; (2) has not adopted the child"; (3) "has not been determined, prior to the date *a petition to adopt* the child is filed, to have a parent and child relationship with the child by a court proceeding"; and (4) has not acknowledged paternity of the child." (Emphasis added.) R.C. 3107.01(H). Although Ohio courts of appeal—including this one—have applied the term as it is defined in Chapter 3107 to actions under Chapter 2151, I do not think that it is an appropriate application of the term since the definition of "putative father" under R.C. 3107.01(H) is read in the conjunctive and one of the

{¶124} In concluding that C.H. and T.H. cannot be placed with either of their parents within a reasonable time or should not be placed with their parents, the trial court found that "both parents have failed to support [C.H. and T.H.] and have failed to maintain a stable residence and employment. They have made minimal to no efforts to participate in services Ordered by the Court in a Case Plan to remedy the cause for removal of the child from the home. And, the parents last visited with the child in August of 2018." (Case No. 32019002, Doc No. 40) (Case No. 32019003, Doc. No 40). Notwithstanding the limited evidence presented by the State at the permanent-custody hearing (as well as the limited evidence in the record—namely, the lack of the alleged case plans), I am constrained to conclude that the evidence presented at trial is sufficient to produce in the mind of the trier of fact a firm belief or conviction that C.H. and T.H. cannot be placed with the parents within a reasonable period of time or should not be placed with the parents.[17] That is, the evidence presented at trial rises to the level of clear and convincing evidence

---

elements of the definition specifically refers to adoption petitions. *See, e.g.*, *In re Rumer*, 3d Dist. Logan No. 8-97-15, 1998 WL 126070, *5 (Mar. 9, 1998).

[17] I am also troubled by the timing of the State's permanent-custody motion in this case based on the time of which Tyler was definitively determined to be the natural father of C.H. and T.H. That is, the Mercer County Child Support Enforcement Agency ("CSEA") filed motions on March 27, 2019 to establish C.H.'s and T.H.'s paternity. (Case. No. 32019002, Doc. No. 20); (Case No. 32019003, Doc. No. 20). Before the trial court journalized its entry establishing Tyler as the natural father of C.H. and T.H., the State filed a motion seeking permanent custody of C.H. and T.H. Specifically, at a hearing on April 30, 2019, the trial court determined Tyler to be the natural father of C.H. and T.H.; the State filed its permanent-custody motion on May 13, 2019; and the trial court journalized its entry establishing paternity on May 17, 2019. (Case No. 32019002, Doc. Nos. 25, 27); (Case No. 32019003, Doc. Nos. 25, 27). The permanent-custody hearing took place less than 30 days later on June 4, 2019. Accordingly, I am suspicious of the reasonableness of the decision to grant permanent custody of T.H. and C.H. to MCDJFS with respect to Tyler.

supporting the trial court's R.C. 2151.414(E)(4) finding. *Compare In re D.A.*, 6th Dist. Lucas No. L-11-1197, 2012-Ohio-1104, ¶ 39 (concluding "that the trial court's determination that father's actions in failing to secure sex offender treatment demonstrated an unwillingness to provide an adequate permanent home for D.A. and A.A. within the meaning of R.C. 2151.414(E)(4) is supported by clear and convincing evidence"). Nevertheless, I do not believe that clear and convincing evidence was presented at trial supporting a finding under R.C. 2151.414(E)(1).

{¶125} At the permanent-custody hearing, Heidi Duhamel ("Duhamel"), a caseworker with MCDJFS, testified that C.H. and T.H. were removed from their home on May 21, 2018. (June 4, 2019 Tr. at 4). Although no case plan exists in this record, Duhamel testified that she developed a case plan to assist C.H. and T.H. to be reunited with Tiffany and Tyler. Specifically, Duhamel testified that the case plan identified "eight items" for Tiffany and Tyler to work on: (1) "continue the drug and alcohol assessment and the mental health assessment, follow recommendations, and sign releases of information for service providers"; (2) "complete parenting classes through Foundations"; (3) "remain free of illegal drugs and non-prescribed medications or alcohol and not have any at their residence"; (4) submit to random-drug screenings; (5) "notifying medical providers that they are required to not take prescription drugs"; (6) "have appropriate income to provide for the needs of themselves and their children"; (7) "have appropriate housing for

themselves and the children"; and (8) "provide the Agency with an address where they are living and at any time that they move." (*Id.* at 13-15). Duhamel testified that "[t]o the best of [her] knowledge, [Tiffany and Tyler had] not done any of those services. They [had] not done any drug screens, they [had] not done any assessments." (*Id.* at 17). According to Duhamel, Tiffany and Tyler visited with C.H. and T.H. on three occasions, August 2, 14, and 21, 2018. In other words, Duhamel testified that Tiffany and Tyler had virtually no contact with C.H. or T.H. for nearly ten months as of the date of the hearing. While I (reluctantly) agree that this evidence clearly and convincingly supports a finding under R.C. 2151.414(E)(4) and, thus, a finding under R.C. 2151.414(B)(1)(a), I do not believe that this evidence clearly and convincingly supports a finding under R.C. 2151.414(E)(1).

{¶126} Although the lack of clear and convincing evidence supporting a finding under R.C. 2151.414(E)(1) is not fatal, I must address a related issue—the trial court's reasonable-efforts finding—before addressing whether the trial court's best-interest determination is supported by clear and convincing evidence. "[T]he procedures in R.C. 2151.414 do not mandate that the court make a determination whether reasonable efforts have been made in every R.C. 2151.413 motion for permanent custody"; however, the trial court must still find that the State made

reasonable efforts to reunify the family. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 42-43.

> No one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety."

*Id.* at ¶ 29, quoting R.C. 2151.01(A). "To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit." *Id.* "For example, R.C. 2151.412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal '[t]o eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.'" *Id.*, quoting R.C. 2151.412. "Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151.413(D)—the '12 months out of 22' rule—'[i]f reasonable efforts to return the child to the child's home are required under section 2151.419' and the agency has not provided the services required by the case plan." *Id.*, quoting R.C. 2151.413(D)(3)(b), and citing R.C. 2151.414(E)(1) and R.C. 2151.419.

> Under R.C. 2151.419, when a trial court
>
> removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1).

> Under certain circumstances, the law dispenses with the duty to make reasonable efforts to reunify the family. Under R.C. 2151.419(A)(2), the agency need not make reasonable efforts if the parent from whom the child was removed has been convicted of or pleaded guilty to certain criminal offenses, has repeatedly withheld medical treatment or food from the child, has placed the child at substantial risk on more than one occasion because of alcohol or drug abuse, has abandoned the child, or has had parental rights involuntarily terminated with respect to a sibling of the child at issue.

*In re C.F.* at ¶ 34.

{¶127} The Supreme Court of Ohio "determined that the trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the agency has not established that reasonable efforts have been made prior to the hearing." (Emphasis sic.) *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08, and 3-17-09, 2018-Ohio-125, ¶ 25, citing *In re C.F.* at ¶ 41, 43.

> According to the Ohio Supreme Court, the trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."

*In re B.S.*, 3d Dist. Allen No. 1-15-44, 2015-Ohio-4805, ¶ 36, quoting *In re C.F.* at ¶ 41.

{¶128} In this case, the trial court made equivocal reasonable-efforts findings. Specifically, in the dispositional entries that are part of this record, the trial court found that "upon the facts determined at the adjudicatory hearing that [MCDJFS] made reasonable efforts to prevent the removal of the child from the home, eliminate removal, or make is [sic] possible for the child to return home." (Case No. 32019002, Doc. No. 19); (Case No. 3209003, Doc. No. 19). That finding contradicts the finding that the trial court made in its adjudication entries. There, the trial court found that MCDJFS "was *unable* to make reasonable efforts to prevent the need for removal of the child from the home, eliminate the need for removal, or make is [sic] possible for the child to return home." (Emphasis added.) (Case No. 32019002, Doc. No. 18); (Case No. 32019003, Doc. No. 18). Since the trial court's reasonable-efforts finding is specifically based on "the facts determined at the adjudicatory hearing," and the trial court found (based on the facts presented at the adjudicatory hearing) that MCDJFS was *unable* to use reasonable efforts, I believe that the trial court's reasonable-efforts finding in its dispositional entries is unsupported by the record and in error.

{¶129} Even assuming that the trial court meant to find that MCDJFS was unable to prevent removal, eliminate continued removal, or make it possible for C.H. and T.H. to return home in its dispositional entry, that finding would also be in error. Determining that MCDJFS was *unable* to use reasonable efforts to prevent

removal, eliminate continued removal, or make it possible for C.H. and T.H. to return home is not one of the reasonable-efforts findings permitted under R.C. 2151.419. That is, the trial court is required under R.C. 2151.419 to determine whether MCDJFS used reasonable efforts to reunify the family or whether one of the enumerated reasons under R.C. 2151.419(A)(2) excuse MCDJFS from using reasonable efforts to reunify the family. That MCDJFS was "unable" to use reasonable efforts to reunify the family is not one of those reasons.

{¶130} Accordingly, for the entries granting permanent custody of C.H. and T.H. to be valid, the trial court was required to make its reasonable-efforts finding in its permanent-custody entry. It did not. Therefore, I would conclude the trial court's decision granting permanent-custody of C.H. and T.H. to MCDJFS is in error and should be reversed.

{¶131} Further compounding the error in granting permanent custody of C.H. and T.H. to MCDJFS in this case is the trial court's best-interest finding under R.C. 2151.414(D). Here, the trial court found that granting permanent custody of C.H. and T.H. to MCDJFS was in their best interest because "there is a suitable an [sic] adoptive home presently being explored, this being the foster home of the child[ren] since [their] removal from the parent." (Case No. 32019002, Doc No. 40); (Case No. 32019003, Doc. No. 40). The adoptability of C.H. and T.H. is not one of the best-interest findings provided by R.C. 2151.414(D). *See In re T.R.*, 120

Ohio St.3d 136, 2008-Ohio-5219, ¶ 14 (noting that the adoptability best-interest factor was removed from R.C. 2151.414(D)); *In re Barker*, 2d Dist. Champaign No. 20001, 2000 WL 775638, *4 (June 16, 2000) ("R.C. 2151.414(D), as amended in 1996, does not require a trial court to consider the adoptability of a child in deciding whether it is in the child's best interests to award permanent custody of the child to a children services agency."). Our sister appellate districts have concluded that a trial court's consideration of a child's adoptability in its best-interest analysis can be harmless error if it is one of many factors considered by the trial court.[18] *See In re Barker* at *4. *See also In re T.A.*, 9th Dist. Lorain No. 13CA010439, 2013-Ohio-5646, ¶ 10. The trial court did not make any alternative best-interest findings. Accordingly, I would conclude that the trial court failed to make the statutorily-required best-interest finding.

{¶132} For these reasons, I would reverse the trial court's orders granting permanent custody of C.H. and T.H. to MCDJFS.

---

[18] Although the adoptability of the child is not specifically a best-interest factor under R.C. 2151.414(D), and a trial court may consider it as a relevant factor in addition to the enumerated best-interest factors, no adoption plan is included in this record. The only evidence presented supporting the apparent adoption plan is Duhamel's testimony that she had adoption plans for C.H. and T.H. (*See* June 4, 2019 Tr. at 19-20).